IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00832-MSK-MEH

TARA WOODS LIMITED PARTNERSHIP, a Minnesota limited partnership,

    Plaintiff,

v.

FANNIE MAE, a federally chartered corporation, and
EICHLER, FAYNE & ASSOCIATES, a Michigan general partnership, a/k/a EF&A Funding, LLC, d/b/a Alliant Capital, LLC, a Michigan limited liability company,

    Defendants.

---

**ORDER ON MOTION TO COMPEL**

---

Pending before the Court is Plaintiff's Motion for an Order Compelling Discovery [filed December 23, 2009; docket #69]. The matter is briefed and has been referred to this Court for disposition. Oral argument would not materially assist the Court in adjudicating the motion. For the reasons that follow, the Court **grants in part** and **denies in part** the Motion to Compel.

**I.    Background**

Plaintiff Tara Woods Limited Partnership ("Tara Woods") initiated this action in Colorado state court[1] alleging the following[2]: Tara Woods is a Minnesota Limited Partnership with its principal place of business in the State of Colorado. Tara Woods Corporation is a Minnesota

---

[1]The state action was removed to this Court based upon diversity jurisdiction on April 10, 2009.

[2]Because many of Plaintiff's discovery requests are challenged as irrelevant and/or overly broad, the Court looks to the allegations of the operative Amended Complaint to determine the breadth and scope of each challenged request. Therefore, the Court reprints here in pertinent part Plaintiff's statement of facts.

corporation and is the general partner of Tara Woods Limited Partnership. Andrew Grossman ("Grossman") is the principal and majority owner of Tara Woods Corporation.

The property that is the basis of this lawsuit was known as Stone Creek Village, located on East Girard Avenue in the City and County of Denver, Colorado. On May 7, 1999, Tara Woods borrowed $19,600,000.00 from EF&A and executed and delivered a Multifamily Note ("Note"), Multifamily Deed of Trust and Assignment of Rents and Security Agreement ("Deed"), a Replacement Reserve and Security Agreement ("Repair Escrow") and other agreements prepared and required by EF&A as a condition of making the loan on the Stone Creek property. The loan was to mature on June 1, 2009.

Pursuant to the terms of the Note, Tara Woods was obligated to pay $131,454.04 each month to the Lender and, in addition, to pay, on a graduated scale, $9,475.00 per month from July 1999 to $12,362.75 through July 2008 for an escrow reserve to pay for repairs and replacements. The escrow accounts were established to pay taxes and insurance. Tara Woods was also required to enter into a "Completion/Repair and Security Agreement." This agreement obligated Tara Woods to deposit $45,600.00 with Fannie Mae to be held in escrow for payment of certain repairs required as a condition of the loan. The repairs were required to be made by May 6, 2000. Tara Woods alleges that it completed the items listed in the Completion/Repair and Security Agreement by May 6, 2000, and requested the return of the balance held in this escrow account; however, the funds were not returned.

Grossman was also the owner of Heather Apartments doing business in Oklahoma as Vintage Lakes Apartments, which was an apartment complex in City of the Village within Oklahoma City, Oklahoma. On October 5, 1999, Grossman, as the owner of Heather Apartments, executed a

Multifamily Note (the "Note") in favor of EF&A Funding, LLC for the amount of $7,300,600 to purchase Vintage Lake Apartments in Oklahoma City, Oklahoma. Grossman personally guaranteed all amounts owed on the Note. Also, on May 30, 2001, Northwest, an entity owned by Grossman, entered into a Multi-Family Note (the "Note") and Multifamily Mortgage, Assignment of Rents and Security Agreement in favor of EF&A Funding, LLC. The Note was secured by property known as Springbrook Apartments ("Springbrook") in Oklahoma City, Oklahoma. The loan was assigned to Fannie Mae.

In 2005, Grossman decided to market Stone Creek in Colorado for sale. On May 25, 2005, Grossman marketed Stone Creek for sale at the price of $37,000,000. Tara Woods alleges there were numerous offers to purchase Stone Creek, and the Defendants required Tara Woods to provide to them detailed information about the marketing efforts, the potential buyers and the offers to purchase Stone Creek. According to Tara Woods, it continually made required payments on the loan, maintained the escrow accounts and were not in monetary default.

In addition, Tara Woods claims an offer was made by Bert Belanger, owner of Downtown Brownstone, LLC, to purchase Vintage Lakes Apartments in Oklahoma. From May 2006 until June 26, 2006, Grossman and Belanger negotiated an arrangement for the purchase of Vintage Lakes Apartments for the price of $13,000,000. As required by the Defendants, Grossman continually informed the Defendants of the negotiations of the sale of Vintage Lakes Apartments.

On November 30, 2006, Fannie Mae commenced foreclosure proceedings on the Stone Creek property alleging Tara Woods was in default for failing to maintain the property lien free, failing to repair and maintain the property, failing to comply with the Denver Housing Code and failing to maintain the necessary insurance. The indebtedness at the time was $17,263,575.34, and Tara

Woods was continuing its efforts to sell Stone Creek. On December 28, 2006, Fannie Mae filed its Verified Motion for Order Authorizing Sale Foreclosure and Petition pursuant to Rule 120, Colo. R. Civ. P., alleging that Tara Woods was in default of the Deed for the reasons stated above.

Tara Woods disputed most of the items that Fannie Mae alleged needed to be repaired at Stone Creek. However, pursuant to the loan documents, Tara Woods claims it had paid into escrow with Fannie Mae sufficient funds to complete the repair and replacement items. While demanding these repairs, Fannie Mae allegedly refused to pay for repairs and replacement items from the escrow account to prevent liens on the property. In addition, Tara Woods alleges that Fannie Mae required it to pay an additional $355,000.00 for repair bills allegedly to prevent Fannie Mae from commencing foreclosure proceedings. In consideration for this payment, Fannie Mae agreed to refund monies from the escrow accounts. Despite paying $355,000.00 as required, Tara Woods alleges Fannie Mae continued to pursue foreclosure and refused to release the escrowed funds for repairs it claimed were necessary.

In an alleged telephone conversation on or about November 7, 2006 between Fannie Mae employee Frank Yanez ("Yanez") and Grossman to attempt to resolve the alleged non-monetary defaults on the three loans, Grossman offered to give to Fannie Mae the Springbrook property in consideration for allowing Vintage Lakes and Stone Creek to be sold. Tara Woods alleges Yanez stated he would not allow Grossman to "hit a home run" in selling the two properties and leave Fannie Mae with Springbrook that had very little equity. He also allegedly stated he was not going to allow Grossman to make any profit from the sale of the properties.

At the same time that Fannie Mae was claiming a default relating to Stone Creek, on November 13, 2006, Fannie Mae notified Heather Apartments that it was in default due to liens on

4

the Vintage Lakes Apartments. Heather Apartments attempted to work with Fannie Mae to remove the liens by again requesting that the vendors and lien holders be paid from the repair escrow. However, on December 6, 2006, Fannie Mae initiated foreclosure proceedings on Vintage Lakes Apartments claiming that Heather Apartments was in default due to the property liens. Fannie Mae claimed that the entire remaining principal and other expenses were due in the amount of $7,348,994.79.

On the same date that the Notice of Default was sent to Heather Apartments, November 13, 2006, Fannie Mae sent a Notice of Default to Northwest claiming that it had defaulted on the Note, and similarly, Fannie Mae asserted that there were several liens filed against the Springbrook Apartments property. On November 26, 2006, Fannie Mae commenced foreclosure proceedings on Springbrook Apartments with respect to the alleged default by Northwest on the Note and Mortgage.

Tara Woods alleges that, around this time period, Fannie Mae was communicating with Bert Belanger about its intent to initiate foreclosure proceedings and encouraging Belanger not to purchase Vintage Lakes Apartments from Heather Apartments and Grossman, but rather wait until the foreclosure proceedings were completed, and for Belanger or the City of the Village to purchase the property from Fannie Mae at a reduced price. Tara Woods claims that representatives of the Defendants were also communicating with the City of the Village in Oklahoma City in an effort to stigmatize Vintage Lakes Apartments to ensure that Heather Apartments could not sell the property, and to enable the Defendants to foreclose and sell the property to the City of the Village at a reduced price to allow the City to develop the property for its own use. According to Tara Woods, the Defendants, after foreclosure proceedings were initiated, negotiated with Belanger to purchase the Vintage Lakes Apartments, once the foreclosure process was completed and Fannie Mae acquired

5

the property.

Tara Woods further alleges that on March 12, 2007, Fannie Mae's representatives or contractors inspected Stone Creek without the permission or knowledge of Tara Woods. At the Rule 120 hearing on March 13, 2007, Fannie Mae's inspector testified about the repair and maintenance issues that supported the basis for the foreclosure. After the hearing and before the hearing was to reconvene on March 27, 2007 at the request of Fannie Mae, Fannie Mae filed a motion requesting a court order to allow another inspection, which was denied on March 21, 2007. However, allegedly in violation of the court's order, the Defendants' attorney attended an inspection by the City and County of Denver at Stone Creek on March 23, 2007.

That same day, Fannie Mae dismissed the foreclosure proceedings and filed a Notice of Withdrawal of Request for Order Authorizing Sale, which was granted on March 27, 2007. No further foreclosure proceedings were commenced. Tara Woods states that it incurred extensive legal fees and costs to contest the foreclosure proceedings. In addition, the foreclosure proceedings allegedly stigmatized the property and disrupted Tara Woods' ability to timely sell Stone Creek for a reasonable profit, which resulted in a substantial reduction in the purchase price.

Tara Woods contends that, as a result of the foreclosure proceedings, Defendants claimed approximately $325,000.00 in attorney fees and costs, and inspection fees and valuation fees of approximately $16,443.00 for which they chose to pay a portion from the Replacement Reserve escrow rather than using those funds for the repairs they required. According to Tara Woods, Defendants then claimed that the escrowed amount was deficient to cover the repairs, and required additional escrowed funds, and on that basis, initiated the foreclosure action. Allegedly, when Stone Creek was sold, the Defendants required that Tara Woods pay for all remaining attorney fees, costs

and expenses they had incurred relating to Stone Creek, before they would agree to the closing on the property.

Tara Woods believes Defendants communicated with the prospective buyers of Stone Creek regarding the alleged necessity for extensive repairs, the alleged presence of high levels of asbestos and the initiation of foreclosure proceedings which caused the diminution in value of Stone Creek, and a reduction in the sales price of over $15,000,000. Stone Creek was sold for $20,000,000 on May 9, 2008, and Fannie Mae was paid the entire indebtedness of the loan.

In this action, Plaintiff claims deceit based on fraud – concealment, breach of fiduciary duty, intentional interference with contractual obligation and prospective economic advantage, civil conspiracy, abuse of process, breach of contract and the covenant of good faith and fair dealing, violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105, *et seq.*, negligent supervision, and violation of the Colorado Organized Crime Control Act, Colo. Rev. Stat. § 18-17-101, *et seq.*

## II. Legal Standard

The party moving to compel discovery must prove that the opposing party's answers are incomplete. *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon, Inc. v. Allied Chemical Corp.,* 534 F.2d 221 (10th Cir. 1976) ("appellees had the burden of proving the answer to their interrogatory was indeed incomplete")); *see also Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D. Colo. 1986) (the burden of proof lies with the proponent to prove answers are incomplete, inadequate, or false).

Here, Tara Woods primarily challenges the Defendants' objections to its discovery requests based upon relevance. The scope of evidence that is subject to discovery under the federal rules is

7

broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P 26(b)(1) (2009). The party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Fed. R. Civ. P 26(b)(1). *Simpson v. University of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004).

Tara Woods requests an order compelling responses to multiple interrogatories and requests for production of documents propounded upon both Defendants. It appears that during the briefing period, additional production was made; therefore, it remains unclear exactly which documents the Plaintiff seeks. Nevertheless, it is clear from the record that Plaintiff seeks, and the Defendants object to, certain categories of documents and information. Thus, for the sake of efficiency, the Court will address Plaintiff's challenges by category rather than by each request.[3]

**III. Analysis**

    A.    <u>Missing Pages and Documents Identified in Depositions</u>

Tara Woods claims in its reply brief that certain requested documents, produced by Defendants since the filing of the within motion, have missing pages, and that documents were identified during depositions that were not submitted by Defendants in response to discovery requests. Tara Woods provides a detailed listing of these documents in the brief. At the same time,

---

[3]The Court finds helpful Defendants' chart listing outstanding discovery issues (to which the Plaintiff did not object); however, even as noted by Defendants, Plaintiff's discovery requests may be categorized by subject matter.

8

Tara Woods admits that the Defendants produced at least some documentation in response to its request for the missing or identified documents, but "the responses were not considered" since its reply brief was due to be filed the same day. Thus, Tara Woods did not identify which of the listed pages/documents were received. Instead, Tara Woods states that it "will continue to attempt to resolve these issues."

Tara Woods' treatment of these documents makes its request for relief a moving target. Therefore, to the extent Tara Woods requests an order compelling production of these documents, the request is **denied** for failure to demonstrate that Defendants' answers are incomplete. *See Bayview Loan Servicing*, 259 F.R.D. at 518.

      B.      <u>Discovery Concerning Heather Apartments/Vintage Lakes and Northwest/Springbrook Apartments</u>

Tara Woods contends that the injurious conduct arising from all three loan transactions between Fannie Mae and the property in Colorado and Fannie Mae and the properties in Oklahoma occurred at or about the same time, involved the same people, and consisted of the same conduct. As such, Tara Woods argues that information concerning all three transactions is relevant to the claims raised in its Complaint. Defendants counter that any information concerning the loan transactions of entities that are not parties to the case and that involve properties located outside the State of Colorado will not likely lead to the discovery of admissible evidence in this case. The Court disagrees with Defendants.

The Court broadly construes relevancy, and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party. *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 552 (D. Colo. 2009). When the requested information appears to be relevant, the party objecting to the discovery has the burden to

establish the information is irrelevant by demonstrating the information does not come within the scope of relevance as defined by Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure. *Id.*; *see also Simpson*, 220 F.R.D. at 359. "Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Hammond v. Lowe's Home Ctrs Inc..*, 216 F.R.D. 666, 670 (D. Kan. 2003); *see also Bonnano*, 255 F.R.D. at 553.

Here, Tara Woods seeks information regarding the loan transactions and foreclosure proceedings (and all conduct arising therefrom) concerning properties located in Oklahoma.[4] Andrew Grossman is the principal and majority owner of Tara Woods and the two entities that owned the Oklahoma properties. While neither Grossman nor the other two entities are parties to this litigation, relevance is framed by the allegations in the Amended Complaint. Two of Tara Woods' nine claims for relief reference the Oklahoma properties. Tara Woods' fourth claim for relief primarily alleges several conspiratorial acts by the Defendants to acquire Stone Creek Village through unlawful conduct that occurred in Colorado, but which also includes an alleged conspiracy among the Defendants, the City of the Village, Oklahoma and a potential purchaser of the Oklahoma properties "to weaken the financial viability" of Grossman and his entities, including Tara Woods. *See* docket #65 at 21-23. Additionally, Tara Woods' ninth claim for relief alleges a violation of the Colorado Organized Crime Control Act and essentially references Defendants' conduct with respect to the foreclosures on the three properties. In its motion, Tara Woods asserts that Defendants'

---

[4]Again, Heather Apartments Limited Partnership owned Vintage Lakes Apartments located in City of the Village, Oklahoma, and Northwest Territory Limited Partnership owned Springbrook Apartments located in Oklahoma City, Oklahoma.

conduct (including "employing the same tactics" with respect to all three properties) demonstrates an agreement to pursue a common plan to "defraud Plaintiff, obtain possession of all three properties and obtain personal judgments against Grossman for deficiencies."

The Court finds that information concerning the loan transactions and foreclosure proceedings of the two Oklahoma properties appears to be relevant for purposes of discovery in this case. Therefore, Defendants have the burden to demonstrate that information concerning the properties does not come within the scope of relevance as defined by Rule 26(b)(1) or is of such marginal relevance that the harm in producing the information would outweigh the presumption in favor of broad disclosure. *Bonnano*, 255 F.R.D. at 552. The Court finds that Defendants have not made the required showing and notes that, while Defendants argue the information is irrelevant, they have already provided to Plaintiff a good number of documents and information concerning the Oklahoma properties. Thus, to the extent that additional documents and/or information exist and have not been produced involving files, transactions or communications made by the Defendants regarding the Oklahoma properties, the Court **grants** the motion to compel the production of such documents and information.[5]

C. Discovery Concerning Escrow Accounts

Although unclear from the briefing, it appears that the requested payment information regarding the escrow accounts for the Stone Creek, Vintage Lakes and Springbrook properties has been produced. However, to the extent that it has not been produced, the Court finds the information relevant to Plaintiff's claims for purposes of discovery (in particular, Plaintiff's ninth claim for

---

[5]Following Defendants' chart, found at docket #94-3, the motion is granted as to Interrogatories No. 5, 6 and 15 to Fannie Mae, Interrogatories No. 5 and 6 to EF&A, Request No. 22 to Fannie Mae, and Requests No. 6, 10, and 12 to EF&A.

relief) and **grants** the motion to compel production of payment information and/or documents requested regarding the escrow accounts concerning the Stone Creek, Vintage Lakes and Springbrook properties.

D. Subject Matter of Witness Testimony

Plaintiff claims that the subject matter provided by Defendants with their Rule 26(a) disclosures of witnesses is insufficient to determine whether depositions must be taken of the listed witnesses. Defendants counter that it has produced sufficient information to comply with their discovery obligations.

The Court has reviewed Defendants' Rule 26(a) disclosures, located at docket #74-13, and finds that Defendants' identification of each person by their titles/positions and the general subject matter of their testimony is sufficient and satisfies Defendants' obligation under Rule 26(a)(1)(A) (i.e., "Ms. Prevete is the Chief Financial Officer of Alliant Capital, LLC and may have knowledge regarding matters including, but not limited to, the various loan defaults that occurred in connection with the properties referenced in the Complaint."). Therefore, the motion is **denied** with respect to Interrogatories No. 17 to Fannie Mae and No. 12 to EF&A.

E. Employment and Personnel Records

Although not originally articulated in its discovery requests,[6] Plaintiff seeks job evaluations of several Fannie Mae employees concerning their loan administration, escrow account management, and decisions regarding inspections, notices of default, foreclosures and property sales.

---

[6]The motion appears to reveal the first time the Plaintiff articulated its specific request for job evaluations (as opposed to the more general "employment and personnel records"), which is in violation of the notice and conferral requirements of Fed. R. Civ. P. 37(a)(1). However, Defendants have set forth objections and argument opposing the request; therefore, the Court will treat the request as if Rule 37(a)(1) has been satisfied.

Defendants argue that the records are confidential and that Plaintiff must demonstrate a compelling need for specific information contained in the personnel files. Plaintiff does not dispute that the information is confidential, but counters that the requested information is relevant, as each employee testified in his or her deposition that their performance evaluations are based upon how they service loans. One employee apparently testified that he receives a bonus based upon the payoffs of loans and must pay back EF&A for any losses.

The Court finds that Plaintiff has failed to demonstrate a compelling need for the confidential information it seeks. Plaintiff has not articulated the relevance of the information to any of its claims, and fails to state a need for documents that apparently reveal information to which the employees have already testified. Therefore, the motion is **denied** as to Request No. 8 to Fannie Mae.

   F. <u>Document Retention Schedules</u>

Plaintiff seeks the Defendants' document retention schedules since 1999 to "ensure that documents relating to the loans have been preserved." Defendants argue that Plaintiff's request is overbroad and unduly burdensome, since the request is not limited to any particular unit, department or business area of EF&A or Fannie Mae, which itself has more than 5,000 employees. The Court agrees with Defendants that the request is overly broad for all of Fannie Mae and EF&A.

However, the Court finds that retention schedules may be relevant to Plaintiff's claims in this matter. Therefore, to the extent that document retention schedule(s) or policy(ies) exist for the particular unit, department or business area that was responsible for the administration of the loans at issue in this case, the Court will **grant in part** the motion to compel with respect to Requests No. 11 to Fannie Mae and No. 15 to EF&A for the production of such schedule(s) or policy(ies) for the

13

period 1999 to present.

G. Compensation Policies and Procedures

Plaintiff seeks Defendants' corporate policies relating to job performance and compensation concerning the administration of loans. Defendants counter that Plaintiff's request is overly broad and unduly burdensome in that it has no limitation as to business units, employees or positions over a number of years. Once again, the Court agrees with Defendants that Plaintiff's request is overly broad. However, the Court finds that Defendants' policies or procedures, to the extent that they exist and describe a compensation program for employees identified in this case as having administered the loans at issue, may be relevant to Plaintiff's claims in this action. Therefore, the Court will **grant in part** the motion to compel with respect to Requests No. 12 to Fannie Mae and No. 16 to EF&A for the production of procedure(s) or policy(ies) describing a compensation program for employees identified as administrators for the loans at issue for the period 1999 to present.

H. Complaints Regarding Commercial Properties

Plaintiff seeks documents and information concerning all complaints made by Defendants' borrowers regarding commercial properties from 2005 to the present. Defendants contend that the request is overbroad, unduly burdensome and not calculated to lead to the discovery of admissible evidence. Plaintiff argues that information concerning all similarly situated borrowers is relevant. The Court disagrees.

Plaintiff's conclusory suggestion that information regarding the complaints of all consumers of commercial property loans since 2005 is relevant to this case, without more, is insufficient to meet its burden to demonstrate the relevancy of its overly broad request. *See Bonnano*, 255 F.R.D.

14

at 553. Plaintiff provides no legal authority or support for its supposition and identifies none of its claims for which the requested information is supposedly relevant.

However, the Court finds that information concerning complaints made against the loan administrators identified in this case may be relevant to Plaintiff's claims. Therefore, the motion is **granted in part** as to Requests No. 14 to Fannie Mae and No. 18 to EF&A for the production of documents concerning all complaints made by Defendants' borrowers against the loan administrators identified in this action regarding commercial properties from 2005 to the present.

      I.         Legal Actions/Investigations/Arbitrations

Plaintiff seeks documents relating or referring to all lawsuits, governmental or regulatory investigations, legal actions or arbitrations filed against Defendants since 2005. Defendants contend that the request is overbroad, unduly burdensome and not calculated to lead to the discovery of admissible evidence. Plaintiff contends that "[i]f Defendants have a policy and process by which they fail to properly manage escrow accounts, initiate improper inspections, notices of default and frivolous foreclosure proceedings, and such conduct has been the subject of either lawsuits or government investigations, this information is relevant and should be produced." Docket #93 at 15.

Plaintiff may be correct; however, its request is overly broad in seeking such information. Therefore, the motion is **granted in part** as to Requests No. 15 to Fannie Mae and No. 19 to EF&A for the production of documents relating or referring to all lawsuits, governmental or regulatory investigations, legal actions or arbitrations filed against Defendants since 2005 concerning claims that Defendants failed to properly manage escrow accounts, initiated improper inspections, issued improper notices of default or initiated frivolous foreclosure proceedings.

15

J.  Organizational Charts

Plaintiff seeks all documents, including organizational charts, to establish the names and hierarchy of all officers and managers of EF&A and Fannie Mae since 1999. Defendants contend that, considering their size and vast number of managerial employees, the request is overbroad, unduly burdensome and not calculated to lead to the discovery of admissible evidence.

Once again, the Plaintiff's conclusory suggestion that information regarding the hierarchy of all officers and managers for both Fannie Mae and EF&A since 1999 is relevant, without more, is insufficient to meet its burden to demonstrate the relevancy of its overly broad request. Rather, the Court finds that organizational charts for the particular unit(s), department(s) or business area(s) responsible for the administration of the loans at issue in this case may be relevant. Therefore, the motion is **granted in part** as to Requests No. 17 to Fannie Mae and No. 21 to EF&A for the production of organizational charts for the particular unit(s), department(s) or business area(s) responsible for the administration of the loans at issue in this case since 1999.

K.  List of Commercial Properties Foreclosed Upon

The Plaintiff seeks a list of all commercial properties on which the Defendants have proceeded through foreclosure since 2005. Plaintiff asserts that the information may lead to the discovery of admissible evidence regarding the "public impact" element of its Colorado Consumer Protection Act claim. Defendants counter that the request is overly broad, unduly burdensome and will not demonstrate the necessary "impact resulting from [Defendants'] alleged deceptive practice," since a list itself will not necessarily show that other commercial properties were impacted by the foreclosures on the properties at issue in this case.

While Defendants may be correct, their argument goes to admissibility rather than to

16

relevancy for purposes of discovery. At the same time, the Court finds Plaintiff's request for information concerning foreclosures since 2005 overly broad, particularly where the foreclosure proceedings on the three properties at issue did not commence until 2006. Therefore, the Court will **grant in part** Plaintiff's motion as to Request No. 20 to Fannie Mae for the production of a list of all commercial properties on which the Defendants have proceeded through foreclosure since November 2006.

      L.      Other Outstanding Issues

According to Defendants' unchallenged surreply and attached chart listing all discovery issues raised by the motion to compel, documents and information concerning the contractual relationship between Fannie Mae and EF&A, including lender/broker agreements, have been produced. Therefore, the motion is **denied as moot** as to Interrogatory No. 13 to Fannie Mae and Request No. 17 to EF&A. In addition, the underwriting manuals referenced in Request No. 13 to EF&A have been produced; thus, the motion is **denied as moot** as to that request. The Court will not address any other issue raised by the Plaintiff for the first time in its reply brief, which is in contravention of Fed. R. Civ. P. 37(a)(1).

### III.    CONCLUSION

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiff's Motion for an Order Compelling Discovery [filed December 23, 2009; docket #69] is **granted in part** and **denied in part** as specified herein. Defendants shall respond to the requests so ordered no later than April 9, 2010. All requests for attorney's fees in this matter are denied.

Dated at Denver, Colorado, this 25th day of March, 2010.

                                                BY THE COURT:

                                                */s/ Michael E. Hegarty*

                                                Michael E. Hegarty
                                                United States Magistrate Judge