IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00832-MSK-MEH

TARA WOODS LIMITED PARTNERSHIP,

        Plaintiff,

v.

FANNIE MAE; and
EICHLER, FAYNE & ASSOCIATES, a/k/a EF&A Funding, L.L.C. d/b/a Alliant Capital,
L.L.C.,

        Defendants.

_____

## OPINION AND ORDER GRANTING MOTION
## FOR PARTIAL SUMMARY JUDGMENT

_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for Partial

Summary Judgment **(# 154)**, the Plaintiff's response **(# 186)**, and the Defendants' reply **(# 197)**.[1]

## FACTS

The Court will greatly summarize the contours of this action, and elaborate as necessary

in its analysis.  The Plaintiff is the owner of an apartment complex named "Stone Creek."

Defendant Fannie Mae holds a note given by the Plaintiff.  The note is secured by a deed of trust

recorded against the Stone Creek property.

---

[1]Also noted as pending on the Court's docket are two joint motions for the determination
of the admissibility of opinion testimony under Fed. R. Evid. 702 **(# 184, 185)**.  The Court has
set **(# 191)** an evidentiary hearing on those motions for March 31, 2011.  In doing so, the Court
has implicitly granted the relief requested by the joint motions – namely, a hearing on the
admissibility of the evidence.  Thus, the Clerk of the Court shall mark these two motions as
having been granted.

Defendant Eichler, Fayne & Assocs. ("EFA") provided collection services to Fannie Mae with regard to the Note and Deed of Trust.  For purposes of this motion, it is sufficient to note that the Plaintiff has attempted sell Stone Creek, but claims that those attempts have been frustrated by the Defendants declaring the mortgage loan in non-financial default.

The scope of this action – and correspondingly, the scope Defendants' motion – has been dramatically circumscribed by the Court's August 12, 2010 Order **(# 193)** dismissing most of the Plaintiff's claims.  The only surviving claims in this action are: (i) claim for tortious interference with prospective business advantage, in that the Plaintiff contends that buyers were allegedly discouraged from extending offers on the property after March 23, 2007, as a result of the Defendants improper noticing of non-financial defaults; and (ii) a claim for breach of contract or breach of the implied covenant of good faith and fair dealing, regarding the Defendants' alleged violation of contractual provisions.  The Defendants' current motion seeks summary judgment ly with regard to the tortious interference with prospective business advantage claim, only.

## ANALYSIS

### A.  Standard of review

The Court's focus with regard to a motion for summary judgment is upon whether a trial is required.  Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment y if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party

2

with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and  enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## B.  Tortious interference claim

This claim is governed by Colorado law. To prove a claim for tortious interference with prospective business advantage, the Plaintiff must show: (i) it expected to enter into a contract with a third party; (ii) the Defendants induced or otherwise caused the third party not enter into the contractual relation; and (iii) the Defendants did so intentionally and via improper means. *Harris Group, Inc. v. Robinson* 209 P.3d 1188, 1195-96 (Colo. App. 2009).

With regard to the first element – the expectation of contractual relations with the third party – Colorado adopts the tort as reflected in the <u>Restatement (Second), Torts</u>, § 766B.  *Harris, id.* at 1196, *citing Dolton v. Capitol Federal Sav. & Loan Assn.*, 642 P.2d 21, 23 (Colo. App. 1981).  Comment c to that section explains that the protected 'prospective contractual relation' is "not used in this Section in a strict, technical sense."  Purposeful, improper interference with discussions that might lead to a formal, binding contract is actionable, as is such interference with prospective quasi-contractual agreements or even "the voluntary conferring of commercial benefits in recognition of a moral obligation."  *Id.*

The Defendants challenge the Plaintiff's ability to establish the first element of the claim: that the Plaintiff reasonably anticipated entering into a contract to sell Stone Creek to a purchaser.  As explained in the Court's August 12, 2010 Order, the tortious interference with prospective business advantage claim is temporally limited to the Defendants' declaration of non-economic defaults on March 23, 2007. [2]  Thus, the only prospective agreements to purchase

---

[2]The Court's August 12, 2010 Order explains that, to the extent the Plaintiff was complaining about tortious behavior by the Defendants prior to March 2007, such claims were barred by the statute of limitations.

of Stone Creek that could have been affected  by this conduct would be those that were being

contemplated immediately prior to March 23, 2007, but which were abandoned by the potential

purchaser after March 23, 2007 due to Defendants' declaration.  Put differently, potential

purchases that were both considered and abandoned prior to March 23, 2007 could not have been

"interfered with" by the Defendants' conduct on that date.

The Plaintiffs' summary judgment response contends that "Plaintiff had several offers to

purchase the property . . . including an offer in May of 2006 [ ] from the Bascom Group and an

offer from Carmel Properties," along with generalized allegations of "continued interest" in the

property by unnamed individuals or entities.[3]   In another portion of its response brief, the

Plaintiff references an entity called Fairfield Properties, that a witness described as a "likely type

buyer for a property similar to Stone Creek" and who "backed out" of what may have been

negotiations to purchase the property.  Accordingly, the Court limits its analysis on the issue of

whether the Plaintiff can show the existence of a prospective business advantage immediately

prior to March 23, 2007 involving potential purchases of Stone Creek by the Bascom Group,

Carmel Properties, and Fairfield Properties.

With regard to Bascom, Exhibit 62 to the Plaintiff's response indicates that, on May 10,

2006, Bascom entered into a "Letter of Reinstatement," indicating its intention to purchase Stone

Creek. However, Exhibit A to the Defendants' reply brief is a June 27, 2006 letter from

Bascom's counsel to the Plaintiff, calling into doubt Bascom's willingness to abide by the

"offer" in the May 10, 2006 letter.  After  that the May 10, 2006 letter was not intended to serve

---

[3] The Plaintiff does not refer to any evidence in the record supporting the contention of "continued interest" by these unidentified prospective purchasers, and thus, this vague assertion is not sufficient to carry the Plaintiff's burden on summary judgment.  Fed. R. Civ. P. 56(c)(1).

as an offer to purchase, Bascom notes that, even if the May 10 letter stood as an agreement to purchase, the letter required Bascom to deposit a sum of earnest money by May 26, 2006. Bascom noted that such deposit "is a condition precedent to the effectiveness of" Bascom's agreement to buy in the May 10 letter.  Bascom pointed out that it did not make the earnest money deposit as required, and therefore "the Purchase Agreement by its own terms became null and void on May 26, 2006."  By all appearances, Bascom abandoned its intention to purchase Stone Creek by May 2006, long before the Defendants' conduct in March 2007.  Thus, Bascom's efforts to purchase Stone Creek cannot constitute a prospective business relationship sufficient to support this claim.

The Plaintiff does not point to any other evidence in the record indicating Bascom's continued interest in purchasing Stone Creek after June 2006.  There is some evidence in the record that Bascom may have had some communications with Frank Yanez, an employee of Fannie Mae, "sometime in 2007," but Mr. Yanez's deposition testimony makes clear that those discussions involved "not the purchase of the property, but the purchase of the note" – namely, the note held by Fannie Mae representing the loan to the Plaintiff.  The Plaintiff holds no property interest in the note, and thus, the fact that Bascom may have sought to purchase the note in 2007 does not support the Plaintiffs' contention that the Defendants actions in March 2007 interfered with a potential business venture between the Plaintiff and Bascom concerning Stone Creek.

The Plaintiff's reliance upon negotiations with Carmel is also unavailing.  The Defendants' reply brief states that the Plaintiff "claims that Carmel made an offer to purchase Stone Creek on or about February 7, 2007 for $ 21.7 million."  (The Defendants' reply brief cites

only to "Deposition Exhibit 214" as support for this contention, but none of the nearly 100

exhibits in the record bear that designation.)   Moreover, at his deposition David Wedmore, one

of Carmel's principals, explained that "at this stage, February of 2007," Carmel "pass[ed] on

making an offer," because they "couldn't make it work."  Consequently, the Court finds that the

Plaintiff has not carried its burden of pointing the Court to specific evidence in the record that

would indicate that Carmel was preparing to make an offer on the property prior to March 23,

2007, and that it abandoned those preparations based on the Defendants' declaration of non-

monetary defaults on that date.[4]

Finally, the Court turns to the Plaintiffs' allegations concerning Fairfield.  Steven Rahe, a

broker working with the Plaintiff, testified that he had a discussion in or about 2005 with Erik

Hagevik of Fairfield, who Mr. Rahe described as "one of the potential buyers of the property."

Mr. Hagevik allegedly stated to Mr. Rahe that "he thought the property might be in foreclosure."

Mr. Rahe was asked whether "this comment that [Mr. Hagevik] ha[d] any impact upon how

---

[4]The Plaintiff cites to the deposition testimony of Andrew Grossman, its principal, in which Mr. Grossman testifies that he had a meeting with David Wedmore of Carmel in "the first quarter of 2008."  Mr. Grossman states that Mr. Wedmore "made it very clear he was aware of the foreclosure [action filed by the Defendants in November 2006] and that – you know, he asked us questions about it."  Mr. Grossman was directly asked whether Mr. Wedmore said Carmel "didn't buy [Stone Creek] in 2007 because of the foreclosure" and Mr. Grossman answered equivocally, stating "I can't remember specifically what Dave said, [but] it was very clear to be that he was aware of it."  Mr. Grossman was again asked specifically whether "Carmel did not buy the property because it knew that the foreclosure action had been filed," to which Mr. Grossman answered "Something close to that."

Assuming that Mr. Grossman's recitation of Mr. Wedmore's statements could be admissible notwithstanding the hearsay rule, such testimony actually undercuts the Plaintiff's position on the tortious interference claim.  Mr. Grossman appears to be stating that it was the November 2006 foreclosure action commenced by the Defendants, rather than the Defendants' March 23, 2007 notices of default, that discouraged Carmel from entering into an agreement to buy the property.  In any event, this testimony does not refute the evidence in the record that Carmel's decision to abandon efforts to purchase Stone Creek occurred prior to March 23, 2007.

Fairfield approached the offer process," to which Mr. Rahe stated "He certainly didn't – never told me that it did."  At best, this testimony indicates only that Fairfield was contemplating purchasing Stone Creek as of 2005; it sheds no light on whether Fairfield was continuing to entertain that possibility on March 23, 2007.  However, ambiguity in the record on this point is resolved by the deposition testimony of Nicholas Forette, one of the Plaintiffs' managers.  Mr. Forette testified that he obtained "feedback" from an unidentified individual at Fairfield, in 2005 or 2006, that Fairfield "was going to stop looking at the property at this point and would wait for the foreclosure before he would try to get the property."[5]  Thus, Mr. Forette's testimony (assuming it would be admissible) refutes any possibility that the March 23, 2007 notices of default by the Defendants discouraged Fairfield from entering into an agreement with the Plaintiff; Mr. Forette's testimony makes clear that Fairfield had already chosen to abandon the pursuit of Stone Creek by November 2006, anticipating that it could obtain the property in foreclosure instead.

Accordingly, the Court finds that the Plaintiff has failed to come forward with evidence that would demonstrate that any potential purchaser in existence prior to March 23, 2007,  was dissuaded in such interest by the Declaration of Default made by the Defendants on that date.  As a consequence there is no need for a trial on this claim, and the Defendants are entitled to summary judgment on the Plaintiff's claim for tortious interference with prospective business advantage.

## CONCLUSION

---

[5]Mr. Forette conceded that the did not speak to the Fairfield representative personally, and that this information came through a "broker."

For the foregoing reasons, the Defendants' Motion for Partial Summary Judgment (**# 154**) is **GRANTED**.  At the conclusion of the proceedings in this case, the Court will enter judgment in favor of the Defendants on the Plaintiff's claim for tortious interference with prospective business advantage.  The Clerk of the Court shall terminate the motions at Docket # 184 and 185 as having been granted by the Court's August 4, 2010 Order (**# 191**) setting an evidentiary hearing on those motions.  The Court having resolved all dispositive motions, the parties shall be prepared at the close of the hearing on March 31, 2011 to schedule a date for the Final Pretrial Conference and the setting of trial.

Dated this 22nd day of February, 2011

BY THE COURT:

Marcia S. Krieger
United States District Judge